

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00089-CV
_____

IN THE INTEREST OF M.R.H., A CHILD

On Appeal from the 100th District Court
Collingsworth County, Texas
Trial Court No. 7834, Honorable Stuart Messer, Presiding

May 26, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an accelerated appeal in which appellant, the mother of M.R.H.,[1] appeals the trial court's order terminating her parental rights to her child.  We will affirm.

Background

M.R.H., female, was born in June 2013.  In December 2013, M.R.H. was removed from the care of her mother and father and placed in a foster home where she

---

[1] To protect her privacy, we refer to the child by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b).

remained at the time of the final hearing.[2]  The caseworker testified M.R.H. was removed from her parents' care because of parental drug use, M.R.H.'s undernourished state, and a very dirty and inadequately heated home. The Department of Family and Protective Services (Department) filed pleadings alleging several grounds under which the mother's parental rights should be terminated.  A final hearing was held in February 2015.  By that time, the mother had moved to South Dakota and had not seen M.R.H. in nine months.  The mother did not attend the final hearing and, despite attempts by her attorney to reach her by telephone, did not participate in the proceeding.  The trial court found the Department proved its allegations by clear and convincing evidence and also determined there was clear and convincing evidence that termination of the mother's parental rights was in the best interests of M.R.H.  This appeal followed.  The mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings supporting termination.

Analysis

The natural right existing between parents and their children is of constitutional dimension.  *Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights.  *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and

---

[2] The father's parental rights were terminated at the final hearing after he filed an affidavit of voluntary relinquishment.  The father is not a party to this appeal.

convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

We review the sufficiency of evidence supporting termination findings by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true*. In re E.N.C.,* 384 S.W.3d at 802 (*citing In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). To give appropriate deference to the factfinder's conclusions, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re E.N.C.,* 384 S.W.3d at 802*.* An appellate court should also disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding*. Id.* If, in light of the entire record, the disputed evidence that a reasonable

3

factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interests. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground on which the trial court relied in terminating parental rights as well as the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

Subsection 161.001(1)(D) permits termination when clear and convincing evidence shows that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(D). Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In the Interest of K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *32-34 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem.

op.) (citation omitted). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that a parent's conduct be directed at the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk*. In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger her physical or emotional well-being. *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The relevant time frame under this subsection is prior to the child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Application

The record before us contains a number of instances illustrating that, prior to M.R.H.'s removal, the mother knowingly placed or allowed M.R.H. to remain in conditions or surroundings which endangered the child's physical or emotional well-being.

First, the trial court heard evidence of appellant's history of illegal drug use. The mother reported she had used methamphetamines on a daily basis for periods of time and she tested positive for methamphetamine, amphetamine, and marijuana in December 2013. The mother also told the psychologist she used methamphetamines and cocaine through October or November 2013. The record is clear the mother used

5

illegal drugs while caring for her infant child and she told the caseworker and a parenting class director that when she was using drugs in the living room, she took M.R.H. into the bedroom. The trial court could have seen this as clear and convincing evidence that the mother knowingly placed or allowed M.R.H. to remain in conditions or surroundings that endangered the physical and emotional well-being of her child. *Jordan,* 325 S.W.3d at 721 (citation omitted) (in considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child)).

Second, the trial court heard testimony of other exacerbating circumstances, including the mother's unstable and inadequate living conditions at the time of M.R.H.'s removal. The mother was using drugs, the home was inadequately heated for the winter temperatures and, M.R.H., just five months old at the time, was wearing only a diaper and a shirt. The mother was feeding M.R.H. "fruit roll-ups" and there was no other food or formula suitable for an infant. The home was excessively dirty with "dog feces on the floor" and the area where M.R.H. slept was "very dirty" and full of "trash." This is additional evidence from which the trial court could have concluded the mother knowingly placed her child in endangering surroundings. *In the Interest of J.R.*, No. 07-12-00003-CV, 2012 Tex. App. LEXIS 3648, at *17 (Tex. App.—Amarillo May 8, 2012, no pet.) (mem. op.) (unsanitary conditions can qualify as surroundings that endanger a child); *Phillips v. Texas Dep't of Protective and Regulatory Servs.,* 25 S.W.3d 348, 354-55 (Tex. App.—Austin 2000, no pet.) (finding same).

Also, the trial court heard testimony from a psychologist, a counselor, a caseworker and a parenting class director that the mother was "neglectful" and

displayed a "general pattern of confusion in her thinking" and "severe decision-making problems that could cause the child to be endangered." This testimony could have been seen by the trial court as further evidence supporting termination. *See In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (a parent's mental state may be considered in determining whether a child is endangered).

The record does contain some evidence favorable to the mother, including that she attended all nine sessions of the parenting class[3] and completed a psychological evaluation as well as a drug and alcohol assessment. The caseworker also testified that it was obvious the mother loved M.R.H.

We conclude that the evidence, viewed in the light most favorable to the trial court's finding, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction the mother knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered her child's physical or emotional welfare. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's endangerment determination or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that the mother knowingly placed or knowingly allowed the child to remain in endangering conditions or surroundings. Accordingly, we find the evidence was legally and factually sufficient to support the subsection (D) endangerment finding with respect to the termination of the mother's

---

[3] The parenting class director testified, however, that the mother did not appear to comprehend and implement what she learned in those sessions.

parental rights to M.R.H.[4]  *See* TEX. FAM. CODE ANN. § 161.001(1)(D).  We overrule the mother's fourth issue, by which she contended that evidence was insufficient.

We turn now to the mother's first issue challenging the trial court's best interests finding.  There is a strong presumption that keeping a child with a parent is in the child's best interests. *In re R.R.,* 209 S.W.3d 112,116 (Tex. 2006).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interests. TEX. FAM. CODE ANN. § 263.307(a) (West 2008).  The best interests analysis evaluates the best interests of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). *Holley* sets forth several non-exhaustive factors that may be considered in making this determination.[5]  The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interests of the child warrants termination of the parent-child relationship. *In re C.H., 89 S.W.3d at 28.*

By the time of the final hearing, M.R.H. was 19 months old, too young to express her own desires.  Thus, the factfinder may consider whether the child has bonded with the foster family, is well-cared for by them, and has spent minimal time with a parent. *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The record shows M.R.H. is thriving in her foster placement where she has resided from the

---

[4] Because we agree with the child's attorney ad litem and the Department that the record contains evidence sufficient to sustain the subsection (D) ground, we need not address the evidence supporting the remaining grounds also found by the trial court.

[5] These include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

age of 5 months and is very bonded to her foster family. M.R.H. had not seen or spoken with the mother in nine months and the record contains no evidence that M.R.H. is attached to the mother. The record contains ample evidence of the foster family's ability to care for M.R.H. The foster mother stays home with M.R.H., the couple has a suitable home, the foster father is employed and is able to provide for the family. The foster parents testified they want to adopt M.R.H. as quickly as possible and the attorney retained for that purpose was present at the final hearing. Evidence of these factors weighs heavily in favor of termination.

Also before the trial court was evidence that the mother "minimized" the reasons for M.R.H.'s removal, failed to perform the tasks in her service plan and failed to show stability in her life. Most notably, evidence showed the mother continued to abuse drugs. *See In the Interest of T.L.R.,* No. 14-14-00812-CV, 2015 Tex. App. LEXIS 3242, at *22-23 (Tex. App.—Houston [14th Dist.] Apr. 2, 2015) (mem. op.) (citation omitted) (parent's drug use supports a finding that termination is in the best interests of the child). Also, the mother moves frequently, engages in criminal behavior, is not employed, does not have a car or a driver's license, and does not have a permanent residence or the means by which to acquire one. The trial court was entitled to find this evidence supported a conclusion that termination was in M.R.H.'s best interests. *See In re G.M.G.,* 444 S.W.3d 46, 59-60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (lack of stability supports a finding the parent is unable to provide for a child's emotional and physical needs). And, while the caseworker did testify to the mother's apparent love for her child, our courts have recognized that when considering the best interests of a child, "[s]ometimes, love is not enough." *J.D.S. v. Tex. Dep't of Family Protective Servs.,* No.

08-14-00191-CV, 2014 Tex. App. LEXIS 10663, at *26 (Tex. App.—El Paso Sept. 24, 2014, no pet.) (mem. op.).

After viewing all of the evidence in the light most favorable to the best interests finding, we conclude the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of the parent-child relationship between the mother and M.R.H. was in the child's best interests. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding that termination was in the child's best interests or was not so significant that the trial court could not reasonably have formed such a belief or conviction. Thus, the evidence was legally and factually sufficient to support the trial court's best interests finding. We overrule the mother's first point of error.

## Conclusion

We have determined that legally and factually sufficient evidence supports the trial court's finding of at least one predicate ground for termination and that termination of the mother's parental rights is in the best interests of M.R.H. We affirm the order of the trial court.

James T. Campbell
Justice